THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
ISADORE LIEBOWITZ AND ARNOLD NASTA, PLAIN-
TIFFS IN ERROR.

Submitted May term, 1933—Decided December 19, 1933.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD
and HEHER.

For the plaintiffs in error, *Edmund A. Hayes.*

For the defendant in error, *Douglas M. Hicks,* prosecutor
of the pleas (*Joseph H. Edgar,* assistant prosecutor).

PER CURIAM.

The plaintiffs in error were convicted on an indictment charging conspiracy. The alleged conspiracy consisted in defrauding Henry Leeds of the sum of approximately $7,000. Leeds was in the barrel business and the state contends that the evidence tended to show that one Zank and one Dietz, together with these defendants, concocted a plan whereby Zank called upon Leeds in an endeavor to sell him certain used whiskey barrels. As part of this pre-arranged plan, Dietz (alias Marks), one of the alleged conspirators, next called upon Leeds saying that he was interested in buying used whiskey barrels. Leeds told Dietz that he didn't have such barrel on hand but he knew where he could get them and thereupon got in touch with Zank, saying that he had a possible customer whom he desired might look at the barrels that Zank had to offer and if they were satisfactory he, Leeds, would buy them for resale.

The following day Zank brought over a sample barrel and a little later Dietz appeared at Leeds place of business, examined the barrel and said, "this is the kind he wanted," and ordered sixty-five of the barrels. The result was that Leeds gave an order to Zank to deliver the barrels which Zank agreed to do the following morning, with the understanding that he was to be paid cash for them. To this Leeds agreed, saying that he would pay cash since he was going to receive cash for the barrels.

Zank and the defendant Nasta came in with the barrels in the morning and before they were taken from the truck, Dietz also appeared, telling Leeds to have the barrels taken from the truck, pay for the merchandise, and that his truck would be along a little later to pick up the barrels. The result was that Leeds gave $150 in cash to Nasta, who drove the truck, cashed a check for $7,000 at his bank, and turned over this money to Nasta, as agreed.

It should also be mentioned that Dietz paid Leeds $500 deposit at the time, but that the truck that he promised to send in to take up the merchandise never came, nor has Dietz been seen since.

The sixty-five barrels purchased by Leeds for $7,150 were presumably barrels that had been used for the storage of whiskey and, obviously, were bought for the sum of $110 each. The resale price agreed to be paid to Leeds was $140 for each barrel.

Zank, Dietz, Liebowitz and Nasta were indicted for the conspiracy. Dietz has not been apprehended and, consequently, could not be tried. Zank turned state's evidence. The defendant Liebowitz, alleged to be the one who concocted this scheme, is the brother of the complaining witness who changed his name from Henry Liebowitz to Henry Leeds.

This ill-gotten gain was divided among these indicted persons—the truckman receiving perhaps $200, the defendant Liebowitz $600, Dietz and Zank dividing the remainder of the amount received from Leeds between them.

Zank testified, in great detail, that he talked with the defendant Liebowitz in September, 1929, and that Liebowitz broached the plan above outlined, telling him to go down and see his brother, Henry Leeds, explain the proposed deal about whiskey barrels, and that "he would fall for it;" that he, Zank, had been convicted of a similar crime before and that Liebowitz knew of this and that at the time of his visit to Liebowitz the other defendant Dietz (alias Marks), accompanied him.

The plaintiffs in error set our fourteen assignments of error seeking a reversal of the conviction of Nasta and Liebowitz on this indictment.

The first and third reasons are argued together and are to the effect that the court permitted the state's witness, Leeds, to testify to conversations held with Zank and with Dietz. The challenge to the testimony, so admitted, is that it was hearsay. Clearly it was not hearsay and does not come within the authorities cited by the plaintiffs in error.

Further argument is made under this point that the testimony concerning this conversation was admitted in evidence before the conspiracy itself was proved. This argument has no substance whatever. It is addressed to the order of proof which always rests in the sound discretion of the court.

*State* v. *Dougherty,* 86 *N. J. L.* 525 (at *p.* 535); 93 *Atl. Rep.* 98.

Under the second assignment of error, it is argued that the trial court should not have received in evidence a carbon copy of the receipt which was given to Dietz by Leeds, purporting to show the payment of $500 on account, but, that the original of this receipt should have been offered or, failing to produce it, an explanation should have been given, and under the third assignment of error, it is argued that certain answers, which we consider responsive, should have been stricken from the record. These matters complained of, we do not consider harmful to the defendant.

Under the fourth point argued, which comprehends the sixth, seventh and eighth assignments of error, the action of the trial court, in receiving certain testimony over objections, is challenged.

Counsel for the plaintiffs in error, in his cross-examination of the state's witness, Leeds, asked him when he had changed his name. The witness answered and the cross-examination continued along lines having to do with his direct testimony submitted in support of the state's case. The cross-examination being finished, the state's attorney, on redirect examination, asked the following question:

"*Q.* Why did you change your name?"

This was objected to as immaterial but the court received the testimony, allowing an exception.

The following is the answer given by the witness:

"*A.* About ten or twelve years ago, a number of people came to me and told me the trouble they got into through my brother, Isadore Liebowitz [one of the defendants here]— a number of them who had cashed his checks and never got the cash. They didn't prosecute him on account of him being my brother. I told people that there is nothing I can do, the best thing is for them to come to me before they give him any cash, and not afterwards. They let it go for awhile, and later on they came to me, one fellow with a card that time, showing that he assumed the name of the American Barrel, while my own was American Cooperage, and went among the trade trying to mislead them that it was my name,

because his name was Liebowitz and my name was Liebowitz, and he would take American Barrel because I had a company that I worked, that I can be proud of, so I thought the best thing for me to do after talking to him about all that—I could never do anything with him, he wouldn't listen to me—so I changed my name to Leeds * * *."

Counsel for defendants asked for a mistrial, which was denied and an exception was taken. The vice in this testimony, received by the trial court, is threefold. It was incompetent because it was clearly hearsay; it was immaterial and it was irrelevant, having no place whatever in the state's case against these defendants and, in our judgment, constituted harmful and prejudicial error. Entirely aside from its being hearsay in character and its immateriality, the testimony thus presented to the jury contained serious allegations concerning the character of one of the defendants which, however true they may have been, yet had nothing whatever to do with the indictment upon which this defendant was being tried, and contained matters which he was not called upon to answer at this trial. This kind of testimony is objectionable and the fact that it is, is so widely recognized and firmly established in our jurisprudence that it requires no citation of authorities to support its rejection. The reason for the rule is admirably set forth in *Bullock* v. *State,* 65 *N. J. L.* 557; 47 *Atl. Rep.* 62, and the authorities cited therein.

The next assignment of error concerns only the case made out by the state against the defendant Nasta. On this point it is sufficient to say that there is no evidence in the testimony of Henry Leeds that would justify convicting Nasta of the crime of conspiracy. Zank, one of those indicted for this conspiracy, who testified for the state, said on his direct testimony that Nasta had no knowledge of "this transaction." On cross-examination, this witness twice testified that he didn't tell Nasta anything about this plan to defraud Leeds, the complaining witness. Furthermore, Nasta offered himself as a witness, answered questions put to him responsively and denied any complicity whatever in this fraudulent scheme. It is our judgment that there was no evidence adduced to

justify submitting this case to a jury as far as the guilt of Nasta was concerned.

We conclude, therefore, that the trial judge should have granted the motion on behalf of Nasta for a directed verdict or should, on his own motion, have directed the jury to acquit him.

The other assignments of error present nothing upon which, we believe, we should make any comment.

The judgment of conviction as to both defendants should be reversed and the record remitted for a new trial.